## Animal Industry.

*Animals—Killing of cow—Rabies—Liability of Bureau of Animal Industry—Act of July 22, 1913.*

1. Under the Act of July 22, 1913, P. L. 928, the Bureau of Animal Industry is not liable for the value of a cow killed while suffering from rabies in quarantine, where the cow was killed for humanitarian reasons, and not to prevent the spread of disease.

2. Not decided, whether the county commissioners are liable under the provisions of the Act of July 11, 1917, §§ 25, 28, P. L. 818, 825.

Attorney-General's Department. Opinion to Hon. Fred Rasmussen, Secretary of Agriculture.

HULL, Dep. Att'y-Gen., Dec. 23, 1921.—This department is in receipt of your communication stating the following facts:

Animal Industry.

On May 24, 1921, five cattle owned by a farmer resident in Allegheny County were bitten by a dog. The dog was killed, and a subsequent examination of its brain in the laboratory of the Bureau of Animal Industry disclosed that the dog had rabies. Upon this discovery the five cattle were placed under quarantine. Twenty-eight days later, one of these developed marked symptoms of rabies, and was killed at the direction of a practicing veterinarian, who had been employed by the owner, and who had been previously instructed by an agent of the Bureau of Animal Industry to kill any of the animals which developed such symptoms. It does not appear that the animal was killed without the consent or direction of the owner. The instruction to kill the animals under such circumstances was not made for the purpose of preventing the spread of the disease, but solely to prevent unnecessary suffering. A cow developing such violent symptoms cannot be cured, and cannot live more than a few days. On Sept. 1, 1921, another cow developed symptoms of rabies and was killed at the direction of an agent of the bureau.

The owner of the cattle made claim upon the County Commissioners of Allegheny County for the payment of damages under the provisions of sections 25-28 of the Act of July 11, 1917, P. L. 818. The county commissioners, acting under advice of counsel, have declined to pay the damages thus claimed on the ground that indemnity should be paid to the owner by the Bureau of Animal Industry of the Department of Agriculture under the provisions of section 21 of the Act of July 22, 1913, P. L. 928. You inquire whether this bureau should pay the indemnity.

The Act of July 22, 1913, P. L. 928, provided that in order to prevent, control and eradicate transmissible diseases of animals and poultry, the State Livestock Sanitary Board (now the Bureau of Animal Industry) may establish quarantines, and may destroy animals, poultry and personal property. Either or both of these remedies may be applied by the bureau to effect the purposes of the act. When the existence of a transmissible disease is discovered, the establishment of a quarantine may be deemed by the bureau a sufficient precaution against the spread of the disease. Or, on the other hand, such precaution may not be sufficient, and resort to the killing of the animals affected may be necessary or advantageous to carry out the purposes of the act. It thus appears that the fact that an animal is killed after it has been placed in quarantine does not necessarily indicate that such action was necessary in order to prevent the spread of disease.

Section 21 of the act cited provides in part as follows: "Whenever, to prevent the spread of disease, it shall be deemed necessary by any member, officer or agent of the State Livestock Sanitary Board to cause any domestic animal to be killed, the State Veterinarian may cause to be paid to the owner of such animal two-thirds of the fair market value thereof. . . ."

Under these provisions, the obligation to pay the indemnity referred to is imposed only in cases where the destruction of the domestic animal is deemed necessary for the prevention of the spread of disease. The mere fact that the animal at the time of its destruction is under quarantine imposes no liability upon the bureau. Unless it appears that the animal was killed at the direction of the Bureau of Animal Industry for the purpose of preventing the spread of disease, the bureau is not liable for the payment of indemnity under the act. In the case before you I understand that the purpose of killing the animal was not to prevent the spread of disease, but was purely for humanitarian reasons, and was done for these reasons with the acquiescence and consent of the owner. Inevitable death was thus hastened, but the cause of the death was the bite of the dog, not the enforcement of the law. It follows

1 D. & C.

that the Bureau of Animal Industry is not liable for the payment of the indemnity referred to in the Act of 1913.

It is beyond the province of this department to express any opinion as to whether the County Commissioners of Allegheny County may be liable under the provisions of sections 25-28 of the Act of July 11, 1917, P. L. 818. Any opinion from this department upon that subject would not bind the commissioners, nor would it protect them in case they acted in accordance therewith. For this reason, we decline to express any opinion upon that question.

I, therefore, specifically advise you that, under the circumstances set forth in your letter, the Bureau of Animal Industry is not liable for the payment of any indemnity under the Act of July 22, 1913, P. L. 928.

From Guy H. Davies, Harrisburg, Pa.